DECISION
This matter comes before the Court on the appeal of Frank Cabral ("Appellant") from a decision of the Warwick Zoning Board of Review (the "Board"). Appellant appeals the Board's denial of his petition for dimensional variance relief. Appellant sought the dimensional variances in conjunction with the construction of a single-family residence on an undersized lot. Jurisdiction of this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellant owns a piece of real estate located on Primrose Drive in the city of Warwick, also designated as Assessor's Plat 203, Lot 303 (the "Property"). The Property is located in the A-10 zoning district. In 2003, Appellant acquired the Property, which consists of a vacant undersized lot. In August of 2005, Appellant submitted an application to the Board seeking dimensional variances in conjunction with a proposal to construct a single-family residence on the Property. A single-family dwelling is permitted by right in the A-10 district, pursuant to § 300, Table 1, Use Regulation 101 of the Zoning Ordinance of the City of Warwick (the "Ordinance"). Specifically, Appellant requested dimensional variances from the Ordinance's requirements respecting lot area, lot frontage and lot width.[1] In his application, Appellant also relied on § 405.4 of the Ordinance, which permits the construction of a residential dwelling on a non-conforming lot.[2]
On or about January 10, 2006, after proper notice was given, the Board held a public hearing to consider Appellant's application. At the outset of the hearing, William DePasquale of the City of Warwick's Planning Department (the "Planning Department") issued some comments on Appellant's application. Mr. DePasquale explained that the Property was an undersized non-conforming lot, which contained 37.5 percent less area than was minimally required in its particular district. He furthermore explained that previous owners of the Property had also filed applications with the Board to construct a single-family dwelling. The Board had denied the first application in 1984 and the second in 1991. Mr. DePasquale then went on to state that the 1991 decision suggested that the Board's denial was based upon evidence of a self-imposed hardship, because the then owners had acquired title to the Property after it had merged with the adjoining lot.[3] Mr. DePasquale further acknowledged that the Board's 1991 denial had been upheld by the Superior Court. Mr. DePasquale then went on to issue the Planning Department's recommendation. He first explained that Appellant was offering an application that included a smaller building footprint than the one proposed in 1991, and with design and setbacks that were more consistent with the surrounding land use. Mr. DePasquale then stated that should the Board decide to approve this new application, the Planning Department recommended that the Board consider addressing nutrient loading issues, particularly with respect to nutrient reduction from the roof and septic system. Specifically, Mr. DePasquale suggested that the Board consider requiring Appellant to install an innovative and alternative Individual Sewage Disposal System ("ISDS") as opposed to the system that Appellant had proposed. Appellant had prior to the hearing received approval from the Department of Environmental Management ("DEM") to utilize another type of ISDS.
Following the issuance of the Planning Department's recommendation, Appellant's attorney presented the proposal to the Board. Appellant was the first witness to be called and he offered brief testimony relating to his purchase of the Property. Subsequent to this testimony, the Assistant City Solicitor (the "Solicitor") intervened and asked to be heard on a legal matter. The Solicitor explained that because the Board had previously denied an application to construct a single-family dwelling on the Property, the doctrine of administrative finality would be a consideration. In particular he stated that the Board "has to make a finding that there's been a material change in circumstances from the previous denial to the current proposal. Because if you don't make that finding, this is going to be precluded by the administrative finality doctrine from being heard again." (Tr. 6.) Appellant's attorney subsequently responded that he agreed with that assessment but that he planned, through expert testimony, to demonstrate that there had been a material change in circumstances. Specifically he claimed that (1) the proposed dwelling was substantially different from the one proposed in 1991, (2) the neighboring area had since changed, and (3) the Board's 1991 finding that the Property had merged with the adjacent property was in error.
Thereafter, Appellant presented the Board with the testimony and written reports of two expert witnesses. The first witness to testify was Edward Pimentel, a certified planner who was accepted as an expert in land use. Mr. Pimentel testified on the research he had conducted with respect to the Property and the surrounding area. He testified that based on this research it was his opinion that the present application was materially different from the previous ones. Mr. Pimentel explained that it not only differed with respect to the proposal for the Property, but that the character of the surrounding neighborhood had also changed since 1991. By way of example, Mr. Pimentel confirmed that other substandard lots in the immediate vicinity had since been issued approval for development by the Board.
At the conclusion of Mr. Pimentel's testimony, a board member questioned Appellant's attorney about the issue of the Property merging with the adjacent lot. Appellant's attorney explained that it was his opinion that no merger had occurred and that the Board's 1991 decision finding otherwise was in error. He explicated that pursuant to the Ordinance, two substandard lots held in common ownership would merge, however in this instant the adjacent lot is not substandard. Thus, he opined that no merger had occurred.[4] After offering this explanation, Appellant's attorney called the second witness, Robert DeGregorio. Mr. DeGregorio was accepted as an expert in the field of real estate. Mr. DeGregorio testified that it was his professional opinion that the proposed dwelling would conform to the surrounding area and that it would not adversely affect the neighboring property values. He further testified that it was his opinion that the Appellant would be denied all beneficial use of the Property if his application was not approved. Thereafter, several neighboring home owners spoke in opposition to the petition.
Upon the conclusion of the offered testimony, the members of the Board discussed the issue of merger with the Solicitor. The Solicitor drew the attention of the Board to its 1991 decision, which had included a finding by the Board that the Property had merged with the adjacent lot. He further explained that the 1991 decision had been affirmed by the Superior Court. When then asked whether the Court had specifically addressed the issue of merger, the Solicitor stated that he believed that that particular matter was not argued to the Court. However, he opined that because the Board's denial was affirmed by the Court, the issue of merger was subject to the doctrine of res judicata.[5] As such, the Solicitor recommended to the Board that it must first make a finding as to whether the issue of "merger is, in fact, barred by that administrative finality slash res judicata doctrine based on the 1991 Court decision." (Tr. 41.) The Solicitor went on to suggest that the Board should also decide the merits of Appellant's application, in the event that an appeal took place and this Court disagreed with its interpretation of the 1991 decision.
After the discussion on the issue of merger concluded, a motion was made by the vice-chairman of the Board "that we make a ruling that we should not be hearing this tonight until they get a clearance or a court decision on whether [lots] 303 and 302 were either legally merged or unmerged." (Tr. 50.) This motion was seconded and passed by a vote of five to zero. Thereafter, the Board addressed the merits of the application and debated the Planning Board's recommendation that a more innovative ISDS be installed. At the close of the debate, a Board member requested that a motion be made to decide the application as if "there were no merger issues and it was a lot that could be built on." (Tr. 74-75.) As a result, another member made a motion approving Appellant's petition with the stipulation that Appellant incorporate the Planning Department's suggestions regarding best management practices for runoff and an advanced ISDS. That motion passed four votes to one.
On March 1, 2006, the Board issued a written decision denying Appellant's petition. The written decision contained the following findings, which are germane to the instant matter.
 "4. The petitioner is proposing to construct a 20' x 34' single-family dwelling on the subject property, which is identical to two previous applications on the same property. The two previous applications were both denied by the Board one in 1984 and again in 1991. The Board's 1991 decision to deny was appealed to the Superior Court and sustained in 1992.
 5. The current owner of the subject property is a developer. The history of the subject property was known by the current owner. The current proposal to develop the property is identical to the proposal denied by the Board in 1991 and which denial was upheld by the Superior Court in 1992.
 . . . .
 7. The Board's legal counsel advised the Board members that the current proposal was subject to the doctrine of administrative finality and was not properly before the Board since the current proposal is identical to the proposals previously denied by the Board and sustained by the Superior Court." (Zoning Bd. Decision at 1-2.)
After making the above findings, the Board issued its conclusion, which was a denial of "petitioner's application for a variance on the basis that the proposal was identical to the previous proposal submitted and denied by the Board in 1991 which denial was upheld by the Superior Court on appeal in 1992." (Zoning Bd. Decision at 2.) Appellant timely appealed the Board's decision. Proper notice of the appeal was provided pursuant to § 45-24-69.1.
 Standard of Review
The Superior Court's review of the decision of a zoning board is pursuant to § 45-24-69(d). Section 45-24-69(d) states:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
It is axiomatic that "the Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review of the Town of NorthKingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). With respect to questions of law, however, this Court's review is de novo. See vonBernuth v. Zoning Bd. of Review, 770 A.2d 396, 399 (R.I. 2001); see alsoKirby v. Planning Bd. of Review, 634 A.2d 285, 290 (R.I. 1993).
Appellant contends that the Board's decision was affected by error of law and erroneous based on the credible, substantial, and probative evidence on the record. Specifically, Appellant argues that the Board's denial of the application based on the doctrine of administrative finality was unsound. Appellant bases this argument on the fact that the Superior Court found that there was no merger in fact or in law and because Appellant's application was not identical to the 1991 application. Moreover, Appellant claims that he has demonstrated a material change in circumstances, which renders the doctrine of administrative finality inapplicable. Further, Appellant avers that there was not competent evidence on the record to support the two conditions that the Board attached to its conditional approval of the application.
The Board maintains that its decision should be upheld because Appellant's application was substantially similar to the previous ones and thus there was no material change in circumstances. The Board also adds that if this Court should disagree with such argument, then in the alternate, it should affirm the two conditions that the Board attached to its qualified approval of the application. Appellant however takes issue with the above argument, which the Board advances in its memorandum. Appellant argues that the Board's post hoc argument is not consistent with the record of the hearing and does not reflect the written decision, which stated that the denial was based on the current application being "identical" to the previous ones.
 The Board's Decision
After a careful examination of the entire record, this Court finds that the Board's written decision does not reflect the actual deliberations of the Board or the vote taken by the Board. Further, this Court agrees with Appellant's argument that the position taken by the Board in its memorandum is not reflective of the written decision or the record. As such, the Board's written decision is not grounded upon evidence adduced before or passed upon by the Board and therefore it was made upon unlawful procedure.
In reviewing a decision of the Board, this Court "must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles." von Bernuth v. Zoning Bd. of Review, 770 A.2d at 401
(quoting Irish Partnership v. Rommel, 518 A.2d 356, 358-359 (R.I. 1986)). Further, this Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. at 245,405 A.2d at 1170. In this instance, the record is completely bereft of any evidence that the Board specifically considered whether Appellant's proposal was indeed "identical to the previous proposal submitted and denied by the Board in 1991." (Zoning Bd. Decision at 2.) The record is further void of any positive findings made by the Board which would support its denial based on this ground. The Board simply did not deliberate on the specific variance relief sought by Appellant, nor did it compare such relief to that which was requested in 1991.
Further, the written decision issued by the Board erroneously includes a finding that "[t]he Board's legal counsel advised the Board members that the current proposal was subject to the doctrine of administrative finality and was not properly before the Board since the current proposal is identical to the proposals previously denied by the Board and sustained by the Superior Court." (Zoning Bd. Decision at 1-2.) After careful review of the record, this Court can find no instance in which the Solicitor advises the Board in such a manner. Rather, the Solicitor advised the Board that the doctrine of administrative finality was a consideration and thus the Board would have to make a finding that there had been a material change in circumstances. The Board never made any such finding and moreover, never found that the current application and the 1991 application were "identical."[6] Markedly, the Board did not speak to the actual particulars of Appellant's application, specifically the requested variances, the building's footprint, or the minimum setbacks. Rather, the Board's deliberation centered on the issue of whether the Property had merged with the adjacent lot.
Thus, upon review of the entire record, it is clear that the Board's actual denial was based upon the idea that the Property had been merged with the adjacent lot. Further, the Board members supposed that the existence of a merger had already been adjudicated by the Superior Court and thus, they were precluded from addressing the issue by the doctrine of res judicata. As stated above, the Property is situated on a non-conforming lot and the adjacent parcel of land is comprised of a conforming lot. In accord with the provisions of the Ordinance, two or more abutting, non-conforming lots owned by the same party shall be considered merged. See Warwick Zoning Ordinances § 405.2. The Ordinance does not, however, require the merger of an abutting non-conforming and conforming lot. Moreover, unbeknownst to the Board on the date of the hearing, this issue had already been decided by the Superior Court. In a decision issued from the bench, the trial justice reviewing the Board's 1991 denial found that:
 "A non-conforming lot lies adjacent to a conforming lot both of which were owned momentarily by a single individual in 1975 . . . The facts are undisputed and because the Warwick Zoning Ordinance only merges two adjacent non-conforming lots, there is no merger in fact or in law with respect to this lot. The only issues properly before the Board . . . are those relating to area and setback." See Carcieri v. Zoning Board of Review of Warwick, No. 91-0670, March 9, 1992, Hurst, J. (bench decision).
The Court then went on to uphold the Board's decision on the separate and distinct ground of administrative finality finding that the applicant had "failed to adduce evidence tending to show the requisite material change in circumstances." Id. As such, the Board's conclusion with respect to the issue of merger was affected by error of law.
If the Board had, in fact, properly addressed the issue of administrative finality and memorialized its findings in a decision, this Court would even so find the doctrine of administrative finality to be inapplicable. Our Supreme Court has stated that "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications." Johnston Ambulatory Surgical Assocs. v.Nolan, 755 A.2d 799, 808 (R.I. 2000). "The changed circumstances could be internal to the application . . . [o]r, external circumstances could have changed." Id. at 811. In this instant, this Court is satisfied that Appellant has demonstrated a material change in circumstances. Appellant's application contemplates a building footprint that is approximately twenty-six percent smaller than that which was proposed in 1991. Further, Appellant's application eliminated the previously requested relief from the minimum side-yard setbacks. Additionally, Appellant's experts testified, and the Planning Department agreed, that the current design and setbacks are more consistent with the surrounding land use. This Court is satisfied that these changes are material. Thus the doctrine of administrative finality is inapplicable.
 The Conditions
After making its determination on the issue of merger, the Board went on to consider whether it would approve the application if this Court disagreed with said determination. This debate focused primarily on whether the Board should incorporate, as conditions, the Planning Department's suggestions regarding best management practices for runoff and an advanced ISDS. At the debate's conclusion, the Board passed a motion approving Appellant's application with the stipulations proposed by the Planning Department.
Pursuant to § 45-24-43, a zoning board may apply certain conditions to its grant of a variance. Section 45-24-43 provides in part:
 "In granting a variance . . . the zoning board of review . . . may apply the special conditions that may, in the opinion of the board or agency, be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town . . . Those special conditions shall be based on competent credible evidence on the record, be incorporated into the decision . . ."
Upon review of the entire record, this Court finds that the special conditions imposed by the Board were not based upon competent credible evidence and were not incorporated into the decision.
The written decision issued by the Board contained only the Board's findings relating to the denial of the application and the vote taken authorizing such denial. The decision does not reflect the Board's conditional approval of Appellant's application on its merits. Nor does the decision include the vote taken authorizing such approval. Moreover, the decision issued by the Board does not contain any special conditions, including those relating to best management practices or an ISDS. Thus, the Board has failed to satisfy one of the requirements of § 45-24-43.
Furthermore, this Court finds that the special conditions, which the Board purported to impose, were not based upon competent credible evidence on the record. The only evidence in the record relating to the issue of drainage appeared in the written report of Appellant's land use expert, Mr. Pimentel. Mr. Pimentel, in his report, explained that Appellant would utilize best management practices throughout construction in order to assure minimum disturbance. He further stated that Appellant had proposed a rather small residential footprint, which limited impervious coverage and assured protection of the neighboring Greenwich Bay. In addition, one of the neighboring property owners did speak on the issue of drainage in the area. However, it is well-settled "in our jurisdiction that the lay judgments of neighboring property owners do not have probative force with respect to issues that are only appropriately testified to by experts." Salve Regina College v. ZoningBd. of Review, 594 A.2d 878, 882 (R.I. 1991).
Mr. DePasquale, of the Planning Department, did address the importance of the reduction of nutrients from the roofs and septic systems within the area located near Greenwich Bay. However, there was no credible evidence offered to show that this particular property would, as a result of its non-conforming area, offer some heightened risk that would justify the imposition of these conditions. Our Supreme Court has stated that "when seeking dimensional relief for lawfully permitted uses the review should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area."Lischio v. Zoning Bd. of Review, 818 A.2d at 693. In the instant matter, Appellant seeks to construct a single-family dwelling on the Property, which is a permitted use in its district. See Warwick Zoning Ordinances § 300, Table 1, Use Regulation 101. Thus, presumptively, a single-family dwelling would not adversely affect the surrounding area, including Greenwich Bay. The Board has offered no competent evidence to demonstrate that the proposed dwelling, as a result of the requested variances, would pose any risk of pollution to Greenwich Bay.
It is further noteworthy that prior to the public hearing, Appellant had already obtained approval from DEM to construct the proposed ISDS on the Property. This Court believes that Appellant should have been entitled to rely on such approval as DEM is uniquely positioned to approve or deny proposed septic systems. This is, in part, a result of the highly qualified environmental engineers and biologists that the agency employs. In light of the above, this Court finds that the conditions imposed by the Board were improper.
 Conclusion
Upon review of the entire record, this Court finds that the decision issued by the Board was affected by error of law and made upon unlawful procedure. Substantial rights of the Appellant have been prejudiced. For the reasons stated above, this Court reverses the Board's decision denying Appellant's application for dimensional variance relief. Further, this Court strikes the conditions imposed by the Board at the hearing, explicitly those relating to best management practices for runoff and an advanced ISDS. Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] The dimensional regulations for district A-10 require a minimum lot area of 10,000 square feet, a minimum frontage of 100 feet, and a minimum width of 100 feet. See Warwick Zoning Ordinances § 300, Table 2A, Dimensional Regulations. The Property has an area of 6,250 square feet, a frontage of 50 feet, and a width of 50 feet.
[2] "In any district in which dwellings are permitted, a dwelling may be erected, enlarged, or altered on a nonconforming lot . . . subject to the following: (A) Where such lot or lots contain less than 7,000 square feet, or have less than 50 feet of frontage, it shall be necessary for the owner thereof to receive from the zoning board of review a dimensional variance in order to construct a new dwelling thereon and the zoning board of review shall designate the maximum size of the dwelling to be placed thereon and its location on said lot or lots and any other conditions it deems reasonably necessary to promote the purpose of this ordinance." See Warwick Zoning Ordinances § 405.4(A).
[3] In 1975, the former owner of the Property bought both the lot at issue and the adjacent lot, Lot 302. Immediately after making the purchase, he conveyed Lot 302 to his father. In its 1991 decision, the Board found that the two lots had merged in the short instant that they were in the hands of one owner. Thus, it found that the petitioner had created his own hardship by splitting the two lots. Further, the Board found that there had been no change in circumstances since the 1984 application, which had requested the same relief.
[4] The representations made by Appellant's attorney were later confirmed by the bench decision issued by the Superior Court, which affirmed the denial of the 1991 application. See Carcieri v. ZoningBoard of Review of Warwick, No. 91-0670, March 9, 1992, Hurst, J. (bench decision). However, at the time of the hearing, none of the parties or the Board members was aware of the contents of this decision.
[5] As stated above, the parties present at the hearing were not at that time aware of the content of the Superior Court's decision affirming the Board's 1991 denial. As will be discussed more fullyinfra, the Court actually held that because the adjacent lot was a conforming lot, there was "no merger in fact or in law" with respect to the Property. See Carcieri v. Zoning Board of Review of Warwick, No. 91-0670, March 9, 1992, Hurst, J. (bench decision). Rather, the Court affirmed the Board's denial on the ground that there had been no material change in circumstances since the 1984 application.
[6] In its memorandum to this Court, the Board attempts to broaden its reasons for denial from those articulated in the written decision. Rather than continuing to argue that the two applications were "identical," the Board now claims that Appellant's application was "substantially similar" to the prior application. The memorandum further states that the Board did not find the expert testimony to be persuasive in so far as it addressed the requisite material change in circumstances. The record, however, does not contain any evidence that the Board disputed the expert testimony or that it in any way found the two applications to be substantially similar.